IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Habeeb Abdul Malik, #231677, ) | |
| ) | Civil Action No. 8:06-3060-RBH-BHH |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT OF MAGISTRATE JUDGE** |
| ) | |
| Jon E. Ozmint, Director SCDC; and ) | |
| Daryl W. Giddings, Division Director of ) | |
| Facilities Management SCDC, both ) | |
| sued in their personal/official capacity, ) | |
| ) | |
| Defendants. ) | |
| ) | |

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the Court on the defendants' motion for summary judgment. The plaintiff alleges that he has been denied adequate heat, bedding, and clothing.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

## APPLICABLE LAW

**LIBERAL CONSTRUCTION OF *PRO SE* COMPLAINT**

The petitioner brought this action *pro se*. This fact requires that his pleadings be accorded liberal construction. *Estelle v. Gamble*, 429 U.S.97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir.1978); *Gordon v. Leeke*, 574 F.2d 1147 (4th 1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes v. Rowe*, 449 U.S. 5 (1980) (per curiam). Even under this less stringent standard, however, the *pro se* Complaint is still subject to summary dismissal.

The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir.1999). A pro se complaint, "can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble*, 429 U.S. 97, 106 (U.S. 1976). A court may not construct the petitioner's legal arguments for him. *See Small v. Endicott*, 998 F.2d 411 (7th Cir.1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985).

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*,

2

477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **DISCUSSION**

At all times relevant to this action, the plaintiff was a Level III inmate housed in the Maximum Security Unit (MSU) at Kirkland Correctional Institution. (Lane Aff. ¶ 5.) He alleges that the MSU is extremely cold and that he and other prisoners are without adequate heat, bedding, and clothing. The plaintiff argues that he is constitutionally entitled to adequate clothing and blankets and that the deprivation of these rights constitutes

3

irreparable harm.  He also contends that the defendants' failure to provide him with warm clothing forces him to forfeit his right to exercising outdoors.

The Court does not take allegations related to poor conditions of confinement lightly. Even modestly cold temperatures can be difficult to endure over an extended period of time. Although the United States Constitution "does not mandate comfortable prisons" and "the ordinary discomfort accompanying prison life is part and parcel of [an individuals] punishment," *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995), the Court is always disturbed by allegations of suspect conditions.  To the extent the MSU is unreasonably cold, even if not unconstitutionally so, the Court would hope that the defendants would always act, while securing the safety of the prison staff and its inmates, in accordance with that proven adage to treat others in the same manner as they might wish to be treated if they were to find themselves in a comparable set of circumstances.  Notwithstanding, the plaintiff's evidence does not create any genuine issues of fact concerning a constitutional violation.

Prison conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment under the Eighth Amendment of the United States Constitution. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To state an Eighth Amendment claim for unconstitutional conditions of confinement, a two prong test must be met: the plaintiff must be able to show that (1) there was a serious deprivation of a basic human need, and (2) that prison officials were deliberately indifferent to the prison condition.  *See Wilson v. Seiter*, 501 U.S. 294, 300 (1991); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Shakka v. Smith*, 71 F.3d 162, 165 (4th Cir.1995).  Under the first prong, the plaintiff must establish that the prison condition was a "sufficiently serious" deprivation of a basic human need.  *Farmer v. Brennan*, 511 U.S. 825, 825 (1994) (citing *Wilson*, 501 U.S. at 298).  The plaintiff must demonstrate that the risk from the prison condition was so grave that it violated contemporary notions of decency and the prison condition resulted in

serious or significant physical or emotional injury. *Strickler*, 989 F.2d at 1379-81. "[O]nly extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim." *Shakka*, 71 F.3d at 166. Further, "to demonstrate that a deprivation is extreme enough to satisfy the objective component of an Eighth Amendment claim, a prisoner must 'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions,' or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." *Id.*; *see also Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).

The second prong involves a subjective analysis requiring the plaintiff to establish that a defendant had a "sufficiently culpable" state of mind. *Id.* The Supreme Court has defined this state of mind requirement to mean deliberate indifference. In essence, a defendant must know of facts from which an inference can be drawn that "a substantial risk of serious harm" is posed to an inmate's health or safety, must actually draw that inference, and then disregard the risk posed to the inmate. *Farmer*, 511 U.S. at 837.

The plaintiff cannot satisfy the first prong of his claim because has not produced any evidence of a serious deprivation of a basic human need. The plaintiff and other MSU inmates are permitted the following clothing and bedding items: one jumpsuit, one pair of underwear, one pair of tennis shoes, two t-shirts, one jacket, and one wool blanket. (Pl. Resp. Summ. J. Ex. 4 § 16.5, Lane Aff. ¶¶ 5, 9, 10.) The jackets are issued to MSU inmates when the average temperature outside is in the mid-60s. (Pl. Resp. Summ. J., Lane Aff. ¶ 10.) These facts are admitted by the plaintiff. (See Pl. Resp. Summ. J. at 10, Pl. Decl. ¶¶ 5, Ex. B, Houston Aff. ¶¶ 1 (blanket, jacket).)

The defendants have also produced evidence that an inmate may request a second blanket. (Pl. Resp. Summ. J., Lane Aff. ¶ 12.) The plaintiff has submitted no evidence that he either requested an additional blanket or that he was ever denied one upon request.[1]

Additionally, the defendants have produced evidence that the cells in the MSU are maintained around 78° when cooling and around 68° when heating. (Pl. Resp. Summ. J., Lide Aff. ¶ 3; Lane Aff. ¶ 6.) Further, there is evidence that when the plaintiff complained about the temperature in his cell on three separate occasions, maintenance responded each time and confirmed that the plaintiff's cell was between 68 and 78 degrees. (Pl. Resp. Summ. J., Lide Aff. ¶ 4, 5, 6; Lane Aff. ¶ 6, 7.) Moreover, the defendants have produced evidence that they create a flow of air at the top of each cell to push the warmer air towards the bottom of the cell and that the floors in the MSU are designed to radiate heat.     (Pl. Resp. Summ. J., Lide Aff. ¶ 5.)

Critically, the plaintiff has produced no evidence that the temperature in his cell was outside of the range identified by the defendants other than to claim he was very cold. He must do so to survive summary judgment. *See Lopez v. Robinson*, 914 F.2d 486, 492 (4th Cir. 1990) (reversing denial of summary judgment because "the inmates presented no evidence of the actual cell temperatures"). The plaintiff seems to suggest that he has submitted evidence demonstrating at least a discrepancy between what the defendants represent his cell temperature to have been, on July 25, 2006, and what it actually was. (Pl. Resp. Summ. J. at 7.) He has submitted a memorandum which confirms that maintenance staff adjusted the temperature on July 25, 2006, suggesting that, prior to the adjustment, the temperature was outside of the SCDC policy range and not 72 degrees. *Id*. Ex. D.

---

[1] He has submitted the affidavit of another inmate who claims to have requested a blanket that was denied because he was not in a cell adjacent to two exterior walls. (Pl. Resp. Summ. J., Ex. 6 ¶¶ 8, 9.) Of course, in that same affidavit, the inmate confirms that it was understood among the inmates that additional blankets were available upon request. *Id*. ¶ 8. Critically, however, the plaintiff, has not produced any evidence that he was denied an extra blanket.

6

First, the defendants have claimed that the temperature in the plaintiff's cell was 72 degrees when it was checked in October, not on July 25, 2006. (Pl. Resp. Summ. J., Lide Aff. ¶ 4, 5, 6; Lane Aff. ¶ 6, 7.) Second, a departure from the defendants' own policies concerning temperature is not a *de facto* constitutional violation. Third, and most critically, the memorandum relied upon by the plaintiff is, in fact, evidence that the defendants responded to the plaintiff's complaint concerning the temperature and *were not* deliberately indifferent.

The plaintiff further contends that a reasonable jury could infer that if the temperature was below 68 degrees on one occasion, to wit, July 25, then it was likely incorrect on others. Of course, the jury might also conclude that the temperature on other days was perfectly acceptable because the plaintiff did not complain. The Court will not speculate as between these two possible perspectives on the evidence. The critical fact is that the plaintiff *did not*, in fact, complain on other days and, therefore, the defendants cannot possibly be found to have ignored any concerns he might have had regarding the temperature of his cell on those days.[2]

But even if the plaintiff could establish a deprivation of his rights, he has not produced any evidence tending to show a subjective and deliberate indifference to the conditions by the defendants, as required under the second prong. The only evidence of record is that when the plaintiff complained about the temperature in his cell, the defendants responded. (Pl. Resp. Summ. J., Lide Aff. ¶ 4, 5, 6; Lane Aff. ¶ 6, 7; Ex. D.) There can be no deliberate indifference where the defendants responded to the plaintiff's complaints and, by the plaintiff's own admission, adjusted the temperature. While the defendants may have been ineffective, incompetent, or negligent in their response, they

---

[2] The plaintiff has submitted evidence that some prison staff wore coats while at work during the summer because it was so cold. (Pl. Resp. Summ. J., Ex. B, Houston Aff. ¶ 2.) First, this is not evidence of any specific temperature in the plaintiff's cell. Second, the inmates are not entitled to the warmest apparel available but rather the most basic of human needs. It is an incident of their punishment.

7

were not indifferent – based on the record before the Court.  And, if the defendants efforts were ineffective, the plaintiff was free to renew his complaint.  Each time he did, the record reveals, and the plaintiff admits, that the defendants responded.

The plaintiff argues that the difference in allowable clothing items afforded general population inmates and MSU inmates is evidence of the defendants state of mind that they purposefully meant to deny the plaintiff proper clothing and "freeze [him] to death."  Of course, the Court takes notice, that MSU inmates are, in all variety of matters, treated differently from the general population, principally for security reasons.  In regards to the defendants' policy prohibiting MSU inmates the right to have boots, gloves, toboggan hats, and thermal underwear, those items create an enhanced security risk and are unauthorized possessions. (Pl. Resp. Summ. J., Lane Aff. ¶ 9.)  More importantly, the plaintiff has no specific constitutional right in those specific items of clothing, only in a constitutionally adequate condition of confinement.  So long as the defendants properly climatize the plaintiff's cell and provide him some minimally adequate cover and clothing, they are not required to give him some specific clothing items of his choosing.  No reasonable jury could conclude that the simple differential in treatment between general population and MSU inmates evidences deliberate indifference, when the remainder of the evidence shows that MSU inmates have been issued a jacket, blanket, shoes, t-shirts, and a jumpsuit and, further, shows that the defendants were responsive in their efforts to maintain cell temperatures between 68 and 78 degrees.

Finally, the plaintiff complains that it is further evidence of a constitutional violation that his t-shirts can be taken from him for poor behavior.  This fact is no condemnation of the defendants' policy or actions.  The plaintiff's ability to retain his t-shirts is in his own hands, so to speak.  The Court will not presume poor behavior of the plaintiff. *Cf. Incumaa v. Ozmint*, 507 F.3d 281, 288 (4th Cir. 2007) (refusing to presume bad behavior would result in inmate's return to MSU for purposes of mootness review).

Ultimately, even accepting the plaintiff's allegations that the cell temperatures were at times less than ideal, the inmates received blankets, jackets, shirts, and jumpsuits and the defendants were at all times responsive to complaints regarding the temperature. *Strickler v. Waters*, 989 F.2d 1375, 1382 (4th Cir. 1993). The Fourth Circuit has stated that "such actions belie the type of 'unnecessary and wanton' infliction of pain proscribed by" the United States Supreme Court. *Id*.

## II.     Outdoor Recreation

The plaintiff has also complained that the insufficiency of winter apparel has undermined his constitutional right to outdoor recreation. The Court is mindful that, in general, prisoners should be permitted some regular out-of-cell exercise. *See Mitchell v. Rice*, 954 F.2d 187, 191-192 (4th Cir.1992). But, no such right exists unfettered. The Fourth Circuit Court of Appeals has explained, "[W]e have never held that denial of out-of-cell exercise opportunities is *per se* unconstitutional cruel and unusual punishment." *Id*. at 191. It is a "totality of conditions" analysis. *Id*.

The plaintiff has not alleged a totality of conditions or really any at all, from which a reasonable jury could conclude that a constitutional deprivation of his right to exercise had occurred. He has not alleged the frequency or the severity of occasions where the alleged inadequacy of clothing compromised his ability to exercise. Such allegations and showing would have to be extreme. There is no allegation or evidence that the plaintiff has been denied indoor or "out-of-cell" exercise regularly, as required. *See Ferola v. Dir. South Carolina Dep't of Corrs.*, 2006 WL 2475396 (D.S.C. 2006) (holding there were no legations or evidence plaintiff was denied "out–of-cell" exercise which would support conditions of confinement claim). The plaintiff has simply alleged that it has occurred.

Further, SCDC Policy No. OP-22.11 allows for outdoor recreation one hour per day and five days a week but only "weather permitting." (Lane Aff. Ex. B.)  Therefore, when

9

there is inclement weather, including unseasonably cold temperatures, inmates are not allowed outdoors, by policy. *Id*. ¶ 13. It is not for want of adequate clothing.

Finally, the plaintiff has not alleged any injury from the denial of outside recreation and none can reasonably be inferred. Such a failure is fatal to his claim. *Strickler*, 989 F.2d at 1381-82.

## **CONCLUSION**

Wherefore, based upon the foregoing, it is recommended that the defendants' motion for summary judgment should be GRANTED.

IT IS SO RECOMMENDED.

s/Bruce H. Hendricks
United States Magistrate Judge

January 4, 2007
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 10768
> Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).